## OAKES et al. v. FEDERAL OIL MARKETING CORPORATION et al. *
### No. 8807.

Circuit Court of Appeals, Eighth Circuit.
Aug. 13, 1930.

*Rehearing denied September 29, 1930.

William J. Berne, of Fort Worth, Tex., for appellants.

Conard E. Cooper, of Tulsa, Okl., for appellees.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

KENYON, Circuit Judge.

This is an appeal from a decree of the District Court of the United States for the Western District of Arkansas dismissing a petition in intervention for want of prosecution. The case is unique in the prolixity of pleadings, approximately five hundred pages of the record being devoted to setting out bills of complaint, amendments thereto and substitutions therefor, amendments to amended and substituted bills, objections to requests for leave to amend paragraphs of amended and substituted bills, exhibits, court orders, applications for extensions of time to take depositions, responses thereto, applications to be permitted to file interrogatories under Equity Rule 58 (28 USCA § 723), and various other pleadings too numerous to be referred to.

Notwithstanding this veritable potpourri of pleadings giving the case a somewhat formidable appearance, when stripped of extraneous and immaterial matter, it presents the very simple question, viz., Did the court abuse its discretion in denying appellant's motion for more time to take testimony and to allow an auditor selected by interveners to examine certain books of defunct defendant oil companies in the hands of receivers and under the control of the United States court for the Southern district of New York?

Appellees presented a motion in this court to dismiss the appeal on the ground that it was taken from certain orders which were interlocutory and not appealable. The complete answer to this is that the appeal is not taken from these orders, but from the final decree dismissing the case for want of prosecution. The action of the court as to these orders is of course assigned as error. The motion to dismiss is denied.

It seems necessary, in determining whether there was an abuse of discretion by the court, to state the history of this litigation in as abbreviated form as possible.

August 15, 1924, one Joseph A. Phelan filed a bill of complaint against Middle States Oil Corporation in the District Court of the United States for the Southern District of New York, which corporation on the same date filed answer consenting to the appointment of receivers, and Julius M. Mayer and Joseph P. Tumulty were appointed receivers of said corporation.

August 21, 1924, Phelan filed an amended and substituted bill of complaint in said cause making additional parties defendant the Federal Oil Marketing Corporation, Western States Oil Corporation, Southern States Oil Corporation, and Sure Oil Corporation. These defendants filed answer consenting to the appointment of receivers, and the same parties were appointed receivers of these corporations.

In September, 1924, Phelan filed an ancillary bill of complaint against the Middle States Oil Corporation et al., in the District Court of the United States for the Western District of Arkansas, said bill showing that the Federal Oil Marketing Corporation, the Marr Oil Corporation, and other defendant corporations had assets within the Western district of Arkansas. The Federal Oil Marketing Corporation, Wichita Petroleum Company, and Marr Oil Corporation filed answer consenting to the appointment of ancillary receivers, and the court appointed Julius M. Mayer and N. T. Gilbert as ancillary receivers to care for the property of these corporations within the jurisdiction of said court.

March 28, 1927, the court permitted, against the objection of the Federal Company and its ancillary receiver, a bill of intervention to be filed in the ancillary receivership by Oakes, Vitek, individually and as trustee of the Vitek Company, et al., against the Federal Oil Marketing Corporation, its ancillary receiver, Gilbert, Southern States Oil Corporation, Western States Oil Corporation, Middle States Oil Corporation, Sure Oil Corporation, Joseph P. Tumulty, and Joseph Glass, who had succeeded Mayer as receiver under appointment of the New York court. This bill alleged that the Southern and Western Corporations had defrauded interveners by virtue of false representations concerning certain stock of said corporations taken by interveners under the following circumstances: The Vitek Company was a common-law trust estate under the terms of a

declaration of trust recorded in the office of the circuit clerk of Union county, Ark., which vested Vitek with title to certain properties. The interveners purchased stock in said trust estate and paid cash therefor. Vitek was the owner of 20,000 shares, and the other interveners 990 shares. Vitek entered into a contract of sale in 1923 with the Western States and Southern States Corporations, which were dominated by the group known as the Haskell interests, by which he sold the entire Vitek properties to said corporations, the consideration being the exchange of 50,000 shares of Southern States stock at $10 par value and 50,000 shares of Western States stock at $10 par value, at the ratio of 2 shares of the stock for 5 shares of the Vitek Company stock at $10 par value. The contract appears in the record, but need not be set out here. Interveners, who were stockholders of the Vitek Company, forwarded their stock certificates to these corporations to carry out the exchange. Vitek executed assignments of all properties of his company to the Sure Oil Corporation at the request of Western States and Southern States, which in turn transferred said properties to the Federal Oil Corporation.

The relief asked in interveners' bill was to set aside these transfers and return the property to the Vitek Company, on the ground that interveners had been induced to exchange their Vitek stock for stock in said corporations by false and fraudulent representations as to the value of said stock. They asked to have the sale rescinded and to be placed in statu quo. No claim was filed by them with the receivers in the Southern district of New York, or within the time provided by the order of the District Court of the Western District of Arkansas in the ancillary proceeding.

April 23, 1927, interveners filed an amended and substituted bill of complaint substantially like the original bill, except it set forth more fully the citizenship of the various parties, and claimed that the action was to recover property, both real and personal, within the district where suit was brought and to enforce an equitable claim to personal property within the intent of section 57 of the Judicial Code (28 USCA § 118).

April 23, 1927, the court entered an order upon motion of the Federal Oil Corporation and its ancillary receiver, requiring interveners to file a cost bond in the amount of $2,500.

November 14, 1927, the Federal Corporation and its ancillary receiver filed a motion

to dismiss the amended and substituted bill of complaint of interveners on a number of grounds, among which was that the bill did not state facts sufficient to constitute a valid cause of action in equity, and that it affirmatively appeared upon the face of the bill that interveners were guilty of laches.

February 17, 1928, the court sustained this motion, and in a memorandum opinion said, in substance, that the motion to dismiss should be sustained because the facts were not sufficient to constitute a valid cause of action in equity, and, second, that the action was clearly barred by laches. The case does not seem to have been dismissed at that time, as on March 5, 1928, interveners filed application for leave to amend their amended and substituted bill of complaint, and in this they sought to excuse their laches by setting forth the action of Vitek, who, upon learning of the appointment of receivers in the fall of 1924, sent an attorney to New York to interview the receivers and .examine the records of the different corporations to ascertain the financial condition of the Western and Southern States Corporations at the time of the Vitek contract with them. They also set forth in this amendment that, as soon as they learned of the receivership, interveners, ex-, cept Vitek, placed their claims in the hands of appellant Oakes for the purpose of investigation; that he was unable to secure information from the receivers; that he then attempted to secure others to make such investigation, and finally employed one Pinney in 1925 or 1926, who made an industrious and intelligent investigation as to the facts, which continued for several months, but that he was unable to secure the information desired from the New York receivers. The Federal Corporation and its receivers objected to the filing of this amendment, but on April 3, 1928, the court entered an order permitting interveners to file the same, and on April 20, 1928, it was filed.

Motions were made on the part of the Southern States Company et al. on special appearance to vacate and set aside warning order and service thereof.

Special pleas to jurisdiction were filed; likewise to dismiss on behalf of all the defendants who had appeared, and, before the court ruled on said motions to dismiss, the interveners filed another application for leave to further amend, to which defendants filed written objections, setting forth that there had been inexcusable delay, and that the application was insufficient.

The court, however, on August 9, 1928, granted the application for leave to amend, and on August 9, 1928, interveners filed their third amendment to the amended and substituted bill. Defendants moved to strike this third amendment, which the court overruled.

Defendants filed motions to dismiss and to strike this third amendment to the amended and substituted bill, which the court overruled, and on November 10, 1928, the Federal Corporation et al. and Western States Corporation et al. filed separate answers.

The answer of defendants Western States et al. contained reservations designed to avoid any general appearance in the case. The answers alleged misjoinder and nonjoinder of parties interveners and laches; that interveners had notice of the entire situation and acquiesced therein; that they knew of the expenditure of large sums of money in the development of property acquired from the Vitek Company; and that they were not in position to restore Southern States and Western States to their status quo; that the intervention of Vitek et al. was not in good faith, and was merely a part of a scheme to further his own interests in the promotion of another company. The answers set forth in considerable detail circular letters to the stockholders of his company by Vitek and advertising matters of the usual laudatory and definite dividend assuring character common to high-power oil stock salesmanship.

November 19, 1928, interveners filed request for hearing on the question of misjoinder and nonjoinder, and moved to strike provisions of the answer of the Federal Oil Corporation and Gilbert, ancillary receiver, and portions of the answer of Western States Oil Corporation et al. These motions were overruled by the court January 8, 1929, reserving to interveners the right to amend their bill by adding parties during the course of the trial on terms to be fixed by the court.

January 15, 1929, the court set the cause for trial on its merits for February 11, 1929, no formal order being entered.

On January 26, 1929, the formal order was entered nunc pro tunc, setting the case for trial February 11, 1929.

January 26, 1929, the court, upon motion of interveners, entered an order resetting the case for trial on the merits on March 25, 1929, to which order defendants objected and excepted.

February 13, 1929, interveners filed motion to take in the state of New York deposi-

tions of receivers, Tumulty and Glass, who had succeeded Mayer, and one Boyle, who had been bookkeeper and accountant of some of the companies. They set forth in the motion what they intended to prove by the testimony of these witnesses, to-wit, that no consideration was paid by the corporations for the properties involved in the litigation, and that the representations made as to values of stock in Western States and Southern States were false; that the reason they had failed to take depositions prior to this time was because of the hearing on the issues of misjoinder and nonjoinder, and the filing by defendants under permission of the court of certain amendments to their answers; that the opinion of the court on the issue of misjoinder was not rendered until January 8, 1929, and that by reason of these proceedings the running of the time to take depositions under Equity Rule 47 (28 USCA § 723) was automatically suspended.

Defendants filed responses to this motion, claiming particularly among other things that interveners had been inexcusably negligent in not taking their depositions within the time prescribed by law and the Equity Rules.

On February 18, 1929, the court entered an order sustaining the motion of interveners and granting sixty days from January 8, 1929, to take depositions under Equity Rule 47.

On the same date the Federal Corporation and its ancillary receiver applied for an order requiring interveners to give additional security for costs.

March 6, 1929, the interveners again filed motion to extend the time theretofore granted for taking the depositions of Glass, Tumulty, and Boyle, and to grant permission to take depositions of other parties residing in New York and Oklahoma. They set forth in this motion that, under the previous order of the court of February 18, 1929, they had given notice to opposing counsel that depositions would be taken in New York on February 27, 1929, before the clerk of the United States District Court; that subpœnas were issued to Tumulty, Glass, and Boyle, but that Tumulty and Boyle were not found, Tumulty being in Washington where he resided, and Boyle in some other county in New York; that Glass appeared and was examined as to the books and papers he had in his possession as receiver covering the period from May 1, 1923; that counsel for defendants had objected to Glass bringing said records into court or permitting the examination thereof; that attorneys for interveners had then pre-

pared an application to the United States District Court for the Southern District of New York for an order directing that a subpœna duces tecum issue to Glass requiring him to produce these books, papers, and documents in his possession for examination in connection with the taking of his testimony. This application was made to Judge Mack, and Glass was directed to produce for examination all such books, records, and documents which he had in his possession covering the period from May 1, 1923, to February, 1924, and counsel set forth in the motion that they could not examine these records and have the same filed before March 8th; that it would take at least thirty days to do this, and that it was necessary to take the testimony of witness, Tumulty, in Washington, and Boyle in Auburn, N. Y., and they asked sixty days from March 8th to complete the taking of the testimony.

Defendants responded to this motion, setting forth the alleged delay in the taking of the evidence, and that the showing by interveners for extension of time was not sufficient under Equity Rule 56 (28 USCA § 723); that the time had elapsed for taking depositions; that under Equity Rule 47, after filing the answers, interveners had sixty days to take their testimony, and that they had shown no diligence whatever in producing the evidence, and defendants objected to the general vagueness of the motion.

On March 16th the court granted the motion of interveners for additional time within which to take depositions giving them thirty days from March 16, 1929. This order provided: "This order shall not be taken or held as being in conflict with any orders heretofore or which may hereafter be made by any Judge of the District Court of the Southern District of New York with reference to production of books, records and papers, which this court recognizes hereby are in the exclusive jurisdiction of the courts of the Southern District of New York, and of which this court has no jurisdiction whatsoever, and does not undertake to exercise jurisdiction hereby."

On the same date the court entered an order requiring interveners to file before April 1, 1929, with the clerk of the court, a surety bond conditioned for the payment of all costs in the District Court or in any other court to which the case might be lawfully carried, and also entered an order setting the case for trial on its merits July 1, 1929.

March 29, 1929, interveners and defendants agreeing thereto, the court modified the

order made March 16, 1929, and granted interveners thirty days from April 8, 1929, to take the depositions of Joseph Glass and J. J. Boyle.

Interveners April 1, 1929, filed a motion to modify the order as to the cost bond requirements, which was overruled on April 9th by the court, and the court extended the time for filing bond to April 22, 1929.

April 25, 1929, defendants filed motions to dismiss interveners' action for failure to file cost bond pursuant to the order of court.

May 9, 1929, interveners filed motion for extension of time to take the depositions of Glass and Boyle, to which defendants filed a response setting forth the various proceedings theretofore had and the opportunities afforded to take depositions, and that interveners had met with no difficulties that could not have been solved by the exercise of ordinary diligence, and objected to further extension of time.

May 14, 1929, interveners filed a motion for permission to submit interrogatories under Equity Rule 58, stating that they had been diligent in attempting to take depositions of witnesses, and that the order of the court as to cost bond had hindered them in taking said evidence.

Defendants filed objections to the proposed interrogatories and to the motion for permission to file them, and emphasized especially the dilatory proceedings and the negligence of interveners in attempting to secure the evidence; that unnecessary pleadings had been filed by interveners causing the parties inconvenience, expense, and unnecessary delay in the trial of the case, and claiming that interveners had violated Equity Rule 47 and failed to take their evidence as provided by said rule, and that under Equity Rule 56 no further testimony could be taken except for strong reasons shown by affidavit. The proceedings in New York were referred to, and the reasons for Mr. Glass objecting to the employment of an auditor for the purpose of auditing and investigating the records of all the defendant companies, the same being referred to as a "fishing expedition," and helpful only to Mr. Vitek in selling additional securities; that in the time that counsel for interveners were in New York they spent only a little over an hour in the examination of Mr. Glass.

The court on June 8, 1929, entered an order overruling defendant's motion to dismiss interveners' bill for failure to file cost bond, and also overruled an oral application of interveners for extension of time within which to take depositions, and denied interveners' motion for leave to file interrogatories under Equity Rule 58, but granted interveners leave to file an application for permission to propound interrogatories to the defendant Federal Corporation and its ancillary receiver. The court at that time stated to counsel that if there was anything to prevent a trial on the first day of July he would like to have it presented then; that he did not want to come there on the first of July and have the matter of postponement again come up.

On the 1st day of July, 1929, the date set for this cause to be tried, interveners filed another motion in which they asked that the trial be deferred until the expiration of the time asked for the taking of testimony, for an order requiring defendants to show cause why the corporate books and records of defendant corporations should not be examined by an expert accountant selected by interveners. In support thereof they submitted the affidavit of W. B. Pinney, one of the solicitors for interveners. This affidavit is long, and we refer to parts of it only. It sets forth that information had been received concerning the case of Pat Marr against certain oil companies, including some of those here involved, for fraud practiced upon Marr; that in that case the books of the Haskell Corporations, including the Southern States, had been examined by one Earnest; that an unsuccessful attempt had been made to secure said Earnest to examine the same books for interveners; that on June 27, 1929, (three days before the case was set for trial) attempts had been made to secure one Eaton of Tulsa, Okl., to make said examination, also unsuccessfully. The general difficulties attendant upon securing the evidence desired were also set forth.

Counsel for interveners orally applied for leave to file motion for extension of time to take testimony and for a rule to show cause why the books of the defendant corporations should not be examined by an expert accountant selected by interveners, to which defendants' counsel objected orally, on the ground that the cause had been set for trial on three different occasions; that defendants were ready and had their witnesses available; that they did not know of this motion until the very day set for trial, and that any further continuances of the case were unfair to them; that appellants had had ample time to secure their testimony. Some interesting remarks of the trial court are in the record in his discussion with counsel as to the situation

of the case; to the effect that the proper way for interveners' counsel to have secured the books and records they desired was by application to the court of the Southern District of New York; that counsel were asking it to do something which Judge Mack in the Southern District of New York refused to do when that court had jurisdiction of the books and the papers; that Mr. Gilbert was receiver in his court, and that he had stated to Capt. Pinney (one of interveners' counsel) June 8th that as far as Mr. Gilbert had possession of any books that he wanted, or if the Federal Oil Marketing Corporation had any books that he wanted, he would make an order for the production of those books at the trial. The Court said: "* * * But insofar as the receivers Glass and Tumulty were concerned, that I regarded them as receivers of the United States District Court for the Southern District of New York and that the books that they had were in their possession as officers of that court, and the proper procedure would be to go to that court for the purpose of getting at those particular books. Now that is the way I decided it on that occasion, and that is identically the same proposition that you are presenting."

The court also called attention to the fact that there was no reason why interveners could not have begun taking their depositions in November, 1928; that the information that developed in the trial of the Marr case in the state of New York was available to solicitors for interveners from the time that Mr. Pinney had information of it from Mr. Marr about the 9th of February, 1929, and that there was no reason to continue the case on the ground of information that had been secured from the Marr case. The court further said: "I can't for the life of me understand why instead of going to all this trouble about securing the books, that the services of the man who made the examination, was not obtained and an application made to the court of the Southern District of New York showing these things and asking that these books be delivered. I don't understand why that wasn't done." The court refused to grant further time for taking the evidence, and refused to make an order for the examination of the books in the Southern District of New York, and called the case for trial on July 1, 1929. Some proceedings were had on that day, and on July 2, 1929, the court having adjourned from July 1st to that date, interveners filed a written election to stand upon their motion for extension of time to take additional testimony and for rule to show cause. The

court entered decree dismissing said intervention for want of prosecution.

The narration of these proceedings certainly would, unexplained, indicate a lack of diligence on the part of interveners in attempting to secure their evidence sufficient to warrant a court in finding them guilty of laches in the prosecution of their case.

This case was commenced March 28, 1927, two years and three months before the date finally set for trial. It was set for trial three separate times. After the filing of the answer in November, 1928, while there were some matters pending as to misjoinder and nonjoinder of parties, there was no good reason why interveners should not proceed under Equity Rule 47 and take their depositions within sixty days. They did nothing. The court, taking into consideration that there were some unsettled questions and that the case perhaps should not be considered at issue, fixed January 8, 1929, as the time when they should commence taking their depositions. Interveners had three extensions of time for taking their evidence, which resulted in granting them three weeks more time than provided by Equity Rule 47. They spent only one day of that time in taking depositions. When on the very day of trial another extension was asked the court evidently concluded that an unwarranted attempt was being made to prolong the litigation.

What excuse is there for the apparent lack of diligence in prosecuting this case? The main one seems to be the difficulty experienced by the interveners in getting an examination of the records and books of the various defunct corporations in New York, in possession of the United States District Court for the Southern District of New York. One of the receivers, Glass, appeared in New York on four different days in March for the purpose of having his deposition taken. He was upon the witness stand for a short period of time, some hour and a half. We do not understand why, upon the examination of Glass, the books showing the financial condition of Southern States Corporation and Western States Corporation in May, 1923, could not as far as material have been introduced in evidence.

March 7th counsel for interveners applied to Judge Mack in New York for an order permitting interveners to put an auditor on the books, claiming it was necessary so to do to obtain the evidence. Judge Mack refused to make the order, and receiver Glass

suggested that an auditor assist counsel for interveners in the examination of him as a witness, claiming the purpose of putting a general auditor on the books was to assist Vitek to secure the names of stockholders of the various corporations. The trial court refused to review the action of Judge Mack to grant an order for the examination of the books in the possession of the United States District Court of New York. We are not called on to go into the question of whether the trial court had any power to make orders as to the books in possession of the court in New York, for the reason that the application to show cause why an auditor of interveners' selection should not be placed thereon was not made until July 1, 1929, the date set for trial. This was clearly negligence. No attempt seems to have been made to take further testimony after Judge Mack's holding.

It is apparent that interveners are not in a position to claim that they used any diligence whatever in seeking to secure the production of the books, documents, and records which they desired to examine. We think the court was very patient in this case and granted sufficient extensions of time to give the fullest opportunity for interveners to take their testimony. Fraud was charged, and undoubtedly the court was influenced by this to extend the time even beyond what might have been reasonable for the taking of the evidence. The developments of the Marr case in New York referred to in the affidavit of Mr. Pinney in support of motion filed July 1, 1929, were not sufficient to warrant a continuance of the case or to offer any excuse for further delay, as all this information was available to counsel for interveners subsequent to February 9, 1929. Another excuse for delay is that interveners were annoyed, and part of their time was taken by the efforts of defendants to secure a cost bond, and that defendants intentionally harassed them thereby. It may be assumed that the court was not a party to any effort to harass in any way interveners by compelling them to file a cost bond. That was within the court's power. Defendants have rights as well as interveners. They had gone to expense in assembling their witnesses and preparing for trial. It is always unfortunate when a case cannot be presented on its merits, but the laches of interveners is too plain upon the record to be brushed aside. Two years and three months ought to be sufficient time to prepare a case of this character for trial. There was no abuse of discretion in the ruling of the trial court refusing further time to take testimony.

It is unnecessary to consider any other question in the case.

The decree is affirmed, without prejudice to appellants' right to bring an independent action.